1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

IN RE BARRETT BUSINESS SERVICES
SECURITIES LITIGATION

This Document Relates To:

ALL ACTIONS.

Case No. 3:14-cv-5884-BHS

**CLASS ACTION**

**PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT AND PLAN OF
ALLOCATION**
 **ORAL ARGUMENT SET**

**HEARING AND NOTING DATE:**
The Hon. Benjamin H. Settle
February 22, 2017
1:30 p.m.
Courtroom E

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................... ii

I.      INTRODUCTION ..................................................................................... 1

II.     THE SETTLEMENT WARRANTS FINAL APPROVAL ............................ 4

        A.      The Standards For Judicial Approval Of Class Action Settlements ..................... 4

        B.      The Settlement Meets The Ninth Circuit Standard For Approval ......................... 5

                1.      The Settlement Is The Result Of Arm's-Length Negotiations And
                        A Mediator's Recommendation ................................................................. 5

                2.      Review Of The *Hanlon* Factors Supports Final Approval Of The
                        Settlement ................................................................................................ 9

                        a)      Plaintiffs' Case Is Strong, But Entails Risks .................................. 9

                        b)      The Expense, Complexity, And Likely Duration Of Further
                                Litigation ...................................................................................... 12

                        c)      The Risk Of Maintaining Class Action Status Throughout
                                The Trial ....................................................................................... 14

                        d)      The Amount Obtained In Settlement ............................................ 14

                        e)      The Extent Of Discovery Completed And The Stage Of
                                The Proceedings ........................................................................... 15

                        f)      The Experience And Views Of Plaintiffs And Plaintiffs'
                                Counsel ......................................................................................... 18

                        g)      The Reaction Of The Settlement Class To The Proposed
                                Settlement ..................................................................................... 20

III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE ......... 20

IV.     THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE ............................... 21

V.      CERTIFICATION OF THE SETTLEMENT CLASS REMAINS WARRANTED ........ 23

VI.     CONCLUSION ...................................................................................... 23

-i-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38ᵀᴴ FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**CASES**

4
*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................... 10

5
*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.,*
6
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................................ 8

7
*Browne v. Am. Honda Motor Co.,*
    2010 WL 9499072 (C.D. Cal. July 29, 2010) ......................................................... 13
8

9
*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992) ................................................................................. 20

10
*In re Critical Path, Inc. Sec. Litig.,*
11
    2002 WL 32627559 (N.D. Cal. June 18, 2002)....................................................... 17

12
*In re Datatec Sys., Inc. Sec. Litig.,*
    2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................................. 20
13

14
*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980)................................................................................. 18

15
*In re Gen. Instrument Sec. Litig.,*
16
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................... 20

17
*Glass v. UBS Fin. Servs., Inc.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. App'x 452 (9th Cir. 2009) .... 17
18

19
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................. 5, 14

20
*In re Heritage Bond Litig.,*
21
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ..................................................... 12, 18

22
*Hicks v. Stanley,*
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................... 9
23

24
*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)................................................................... 23

25
*In re Indep. Energy Holdings PLC Sec. Litig.,*
26
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)......................................................... 8

27

-ii-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........................................................................ 4, 5

*Linney v. Cellular Alas. P'ship*,
151 F.3d 1234 (9th Cir. 1998) ..................................................................... 16, 17

*Lundell v. Dell, Inc.*,
2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) .................................................... 8

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ........................................................... 14, 15, 16, 17

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .............................................................. 12, 19

*Nobles v. MBNA Corp.*,
2009 WL 1854965 (N.D. Cal. June 29, 2009) ................................................ 12

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................... 4, 5, 14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 4, 14, 20

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) .................................................................... 16

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................ 18

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................... 23

*In re Rambus Inc. Derivative Litig.*,
2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ............................................. 15, 20

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................................... 22

*Satchell v. Fed. Express Corp.*,
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .................................................. 8

*In re TD Ameritrade Account Holder Litig.*,
2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) .......................................... 16, 17

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ........................................................................ 9, 12

-iii-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ........................................................................ 13

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
    2016 WL 6248426 (C.D. Cal. Oct. 25, 2016) ............................................... 14, 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    1988 WL 158947 (W.D. Wash. July 28, 1988) ................................................ 12

*In re Wireless Facilities, Inc. Sec. Litig.*,
    253 F.R.D. 630 (S.D. Cal. 2008) ...................................................................... 22

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................... 20

**STATUTES, RULES AND OTHER AUTHORITIES**

15 U.S.C.
    § 78u-4(a)(7) ..................................................................................................... 22
    § 78u-4(b)(2)(A) ............................................................................................... 10

Fed. R. Civ. P.
    Rule 23, *et seq.* ............................................................................................*passim*

H.R. Conf. Rep. 104-369 (1995) ............................................................................. 20

-iv-

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

MOTION FOR FINAL APPROVAL
(CASE No. 14-CV-5884-BHS)

1    Pursuant to the Court's November 7, 2016 Amended Order Preliminarily Approving

2 Settlement and Providing for Notice ("Preliminary Approval Order," ECF No. 117), Lead

3 Plaintiff Painters & Allied Trades District Council No. 35 Pension and Annuity Funds ("Lead

4 Plaintiff" or "Painters Funds") and named plaintiff Bakers Local No. 433 Pension Fund ("Bakers

5 Fund," and with Lead Plaintiff, "Plaintiffs"), submit this motion in support of final approval of

6 the proposed Settlement of this consolidated securities class action and the related proposed plan

7 for distribution of the Settlement proceeds to Settlement Class Members who submit valid

8 Claims.[1]

9    If granted final approval, the Settlement will resolve all claims in the Action against all

10 Defendants.

11 **I.    INTRODUCTION**

12    Plaintiffs and Plaintiffs' Counsel have successfully settled this complex and difficult

13 class action for a cash payment of $12 million for the benefit of the Settlement Class.  Having

14 evaluated the facts and applicable law, and recognizing the risks and expense of continued

15 litigation, they submit that the proposed Settlement is in the best interests of the Settlement

16 Class.

17    The terms of the Settlement are set forth in the Stipulation (ECF No. 112-1).  In the

18 Court's November 7, 2016 Preliminary Approval Order, the Court preliminarily approved the

19 Settlement, certified the Settlement Class for purposes of the Settlement, and directed that notice

20 be distributed to potential members of the Settlement Class.[2]  Shortly thereafter, beginning on

---

[1] When not defined herein, capitalized terms are defined in the Stipulation and Agreement of Settlement (the "Stipulation," ECF No. 112-1).

[2] The Settlement Class, as more fully defined in the Stipulation and certified in the Court's Preliminary Approval Order, includes all persons and entities who purchased or otherwise acquired Barrett common stock between February 12, 2013, and March 9, 2016, inclusive (the "Settlement Class Period"), and were damaged thereby (the "Settlement Class").  *See* Preliminary Approval Order, ECF No. 117.   Defendants and certain other persons and entities are excluded from the Settlement Class.  Also excluded from the Settlement Class are any

-1-

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

November 17, 2016, Barrett and its insurers caused the $12 million Settlement Amount to be deposited into an escrow account invested for the benefit of the Settlement Class.

As discussed below, the Settlement is the result of an eight-month mediation process, including two in-person mediation sessions, and a double-blind mediator's recommendation from an experienced and nationally-recognized professional mediator. The details of the mediation process, the mediator's bases for his mediator's recommendation, and the mediator's curriculum vitae are included in the Mediator's Declaration in support of the Settlement. The Mediator's Declaration ("Melnick Decl.") is attached as Exhibit 1 to the accompanying Declaration of Timothy A. DeLange in Support of Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("DeLange Declaration").

The Settlement is further supported by the results to date of the notice given to the Settlement Class. Following a telephonic hearing, on November 7, 2016, the Court granted preliminary approval of the Settlement and authorized sending notice of the Settlement to the Settlement Class. The extensive notice process – including direct mailing, publication notice, and a Settlement-dedicated website and toll-free telephone line – is detailed in the Claims Administrator Declaration, attached as Exhibit 2 to the DeLange Declaration ("Bareither Decl."). Following the notice process, including direct mailing of the Notice to over 22,899 potential Settlement Class Members and their brokers and nominees, there has not been a single objection or request for exclusion from the Settlement Class. The deadline for submission of objections and exclusion requests is February 1, 2017. In the event that any are received, they will be addressed in Plaintiffs' reply papers due February 15, 2017.

The Court-appointed Lead Plaintiff and additional named Plaintiff – both institutional investors who oversaw the litigation and settlement of the Action – support the Settlement.

---

putative Settlement Class Members who exclude themselves by submitting a request for exclusion in accordance with the requirements set forth in the Notice.

MOTION FOR FINAL APPROVAL
(CASE NO. 14-cv-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

When accepting the mediator's recommendation, Plaintiffs and Plaintiffs' Counsel understood the serious risks faced in proceeding with further litigation.  By then, Plaintiffs' Counsel had conducted an extensive investigation, including, among other things, interviews of multiple witnesses with direct knowledge of the alleged facts; filed multiple detailed consolidated complaints as further facts were revealed; opposed Defendants' various rounds of motions to dismiss; and fully analyzed the available insurance policies and Defendants' ability to fund the recovery.  Plaintiffs' Counsel were aware that Defendants had made arguments in their motions to dismiss challenging the sufficiency of the pleadings as to the elements of the claims, and even if the Complaint was sustained on the pleadings, Defendants would continue to strongly dispute the facts and Plaintiffs' theories of the case throughout the litigation, including at class certification, summary judgment, trial, and on appeal.

Plaintiffs' Counsel also monitored Barrett's financial condition, and understood that its ability to pay a substantial judgment that could potentially be obtained after further motion practice, trial and appeals, was uncertain.  Plaintiffs' Counsel were further aware that the available insurance policies were diminishing due to defense costs.  Indeed, the Settlement requires exhaustion of the remaining $8.7 million (out of the original $10 million) in applicable insurance coverage, as well as a substantial contribution by Barrett itself in the amount of $3.3 million.  Under these circumstances, Plaintiffs and Plaintiffs' Counsel agreed that it was in the best interests of the Settlement Class to accept the mediator's recommendation to settle for $12 million now, rather than face the extensive risks of a lesser, or no recovery, years from now. Mediator Melnick confirms in his professional mediator opinion that "the total $12 million Settlement was the most that could be obtained by Plaintiffs at the time the Settlement was reached."  Mediator Decl. ¶10.

Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Settlement proceeds.  The Plan of Allocation will govern how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants.  The Plan of Allocation was prepared with the assistance of Plaintiffs' damages consultant and is based on his

-3-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-cv-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

analysis estimating the amount of artificial inflation in the prices of Barrett common stock during the Settlement Class Period.  *See* Declaration of Bjorn I. Steinholt, CFA in Support of the Proposed Plan of Allocation ("Steinholt Decl."), attached as Exhibit 3 to DeLange Decl.  As discussed below, it is substantively the same as plans that have been approved and successfully used to allocate recoveries in other securities class actions.  The Plan of Allocation is fair, reasonable and adequate, and should be approved.

## II.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   The Standards For Judicial Approval Of Class Action Settlements

It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution," especially in class actions.  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.").  Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action may be settled upon notice of the proposed settlement to class members, and a court finding, after a hearing, that it is fair, reasonable and adequate.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012).

A court's role in settlement approval is essentially twofold:  determining whether the settlement (i) is tainted by fraud or collusion, and (ii) is fair, reasonable and adequate.  *See Officers for Justice*, 688 F.2d at 625.  The decision whether to approve a settlement is committed to the Court's sound discretion.  In exercising that discretion, courts in the Ninth Circuit are instructed to consider the following factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement.

-4-

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625); *see also Lane*, 696 F.3d at 819 (referring to these as the "*Hanlon* factors"). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. Weighing these factors is not an adjudication of the merits of the case:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what **might** have been achieved by the negotiators.

*Id*. (emphasis added).

Here, the Settlement is the product of hard-fought litigation and extensive arm's-length negotiations before a highly-qualified mediator by experienced securities class action litigators directed by institutional investors. There is not even a hint of collusion. In Plaintiffs' and Plaintiffs' Counsel's considered judgment, as well as the Mediator's professional mediator judgment, the Settlement represents a fair, reasonable, and adequate resolution of the litigation and warrants this Court's approval.

### B.   The Settlement Meets The Ninth Circuit Standard For Approval

#### 1.   The Settlement Is The Result Of Arm's-Length Negotiations And A Mediator's Recommendation

The Parties' negotiations were thorough and the Settlement was reached without collusion after good-faith bargaining over an eight-month period, including two in-person mediation sessions, and resulting in the Parties accepting a double-blind mediator's

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

recommendation made by a professional, experienced, and well-respected mediator. As detailed in Mediator Melnick's curriculum vitae, which is attached to his Declaration and also available on the Settlement website, Mediator Melnick is the managing partner for Weinstein Melnick LLC, and partner with the Honorable Daniel Weinstein (Ret.) on some of the largest complex commercial disputes, both in the United States and abroad. As a professional mediator, he has been involved in the mediation and successful resolution of thousands of complex litigation disputes. Mediator Melnick has directly mediated over 1,000 disputes, including complex securities class actions and shareholder derivative actions; published articles on mediation; founded a nationally ranked dispute resolution journal; and taught mediators. *See* Mediator Decl. ¶3 and Ex. A.

Mediator Melnick's experience and expertise was particularly necessary here. Specifically, while the litigation was continuing, with amended complaints being filed and various motions to dismiss pending, the Parties participated in two separate in-person all-day mediation sessions before Mediator Melnick. The first took place on January 5, 2016. The participants included Lead Counsel and counsel for Lead Plaintiff Painters Funds, Bernstein Litowitz Berger & Grossmann; counsel for named Plaintiff Bakers Fund, Wolf Haldenstein Adler Freeman & Herz LLP; Liaison Counsel for Lead Plaintiff, Byrnes Keller Cromwell LLP; counsel for Defendants, including, among others, Miller Nash Graham & Dunn LLP; and Barrett's Chief Executive Officer and Chief Financial Officer. In advance of the first in-person mediation, in December 2015, the Parties exchanged and submitted to the mediator detailed confidential mediation statements and voluminous case-related materials addressing the facts and law applicable to the case. After the conclusion of that first session, no settlement was reached, and the Parties continued progressing with the litigation. Mediator Decl. ¶5.

The second in-person mediation session was held on June 30, 2016. Between the first and second mediation sessions, Defendants filed additional motions to dismiss. In addition, the Court granted Plaintiffs' motion to amend the complaint in light of new information alleged, including that Barrett would have to restate three years of financial statements, that its CFO had

-6-

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   made a series of unsupported journal entries in 2013 that affected Barrett's reported workers'

2   compensation expense, and that it had terminated its CFO.  Plaintiffs thereafter filed their

3   amended complaint on March 21, 2016, alleging claims on behalf of investors who purchased

4   Barrett stock between February 12, 2013, and March 9, 2016.  Defendants filed new motions to

5   dismiss, which Plaintiffs opposed.   The motions to dismiss were fully briefed when the

6   Settlement was reached.  *Id.* ¶6.

7        Prior to the second mediation session, the Parties exchanged and submitted updated

8   mediation statements.  The second full-day, in-person mediation session was again attended by

9   Plaintiffs' Counsel and Defendants' Counsel and representatives.  The second mediation session,

10  like the first, ended without any agreement being reached.  *Id.* ¶7.

11       Over the course of the next few months, Mediator Melnick conducted further telephonic

12  discussions with the Parties in attempts to reach a resolution.  He ultimately made a double-blind

13  mediator's recommendation to settle the Action for $12 million in cash, which the Parties

14  separately accepted.  *Id.* ¶8.

15       As explained by Mediator Melnick,

16       I recommended this settlement amount based on my experience as a professional

17       mediator in complex securities class actions, my involvement in the negotiations,

18       review   and   analysis   of   the   Parties'   mediation   submissions,   extensive

19       communications with the Parties, and assessment of the risks inherent in this

20       litigation.  I found the discussions in the mediation statements and during and

21       related to the mediation sessions to be extremely valuable in helping me

22       understand the relative merits of each Party's positions, and to identify the issues

23       that were likely to serve as the primary drivers and obstacles to achieving a

24       settlement.  Counsel presented significant arguments regarding their respective

25       client's positions, and it was apparent to me that both sides possessed strong, non-

26       frivolous arguments, and that neither side was assured of victory.

27  *Id.* ¶9.

-7-

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1    Mediator Melnick further explains the great risks that he considered when making the

2    mediator's recommendation, including (as discussed further below) the risks of further litigation

3    through a ruling on the motions to dismiss, through class certification, motions for summary

4    judgment, trial, and potential appeals, Barrett's ability to pay a substantial judgment if one was

5    eventually obtained by Plaintiffs, and the depleting insurance coverage.  In particular, Mediator

6    Melnick considered information provided to him and Plaintiffs regarding Barrett's financial

7    condition, including its short-term liabilities, short-term assets, cash expenditures and cash

8    receipts, and Barrett's cash-flow analysis.  Mediator Melnick, in making his professional

9    mediator's recommendation, understood that the proposed Settlement at this level of $12 million

10   requires exhaustion of the remaining $8.7 million in applicable insurance coverage, and a $3.3

11   million cash contribution by Barrett.  *Id.* ¶10; *see also* Barrett's October 27, 2016 Press Release

12   entitled "BBSI Reaches Agreement to Settle Shareholder Lawsuit" (disclosing that

13   approximately $8.7 million would be paid by Barrett's insurance carriers, and the remaining $3.3

14   million by Barrett).  Mediator Melnick assures the Court that "the entire process involved

15   significant disputed issues and hard-fought, arm's-length negotiations." *Id.* ¶11.

16   As courts within this Circuit and nationwide have found, "[t]he assistance of an

17   experienced mediator in the settlement process confirms that the settlement is non-collusive."

18   *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007); *see Lundell*

19   *v. Dell, Inc.*, 2006 WL 3507938, at *3 (N.D. Cal. Dec. 5, 2006) (approving class action

20   settlement that was "the result of intensive, arms'-length negotiations between experienced

21   attorneys familiar with the legal and factual issues of this case"); *see also In re Bear Stearns*

22   *Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 265 (S.D.N.Y. 2012) (finding a

23   settlement fair where the parties engaged in "arm's length negotiations," including mediation

24   before "an experienced and well-regarded mediator of complex securities cases"); *In re Indep.*

25   *Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact

26   that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of

27

-8-

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

a private mediator experienced in complex litigation, is further proof that it is fair and reasonable") (citation omitted).

The fact that the Parties did not reach agreement at the initial, or even the second, mediation session, and required additional negotiations, and finally a mediator's recommendation, over an eight-month period further demonstrates that the Settlement was the product of arm's-length negotiations.  *See, e.g., Hicks v. Stanley*, 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted).  The arm's-length nature of the negotiations supports final approval of the Settlement.

## 2.    Review Of The *Hanlon* Factors Supports Final Approval Of The Settlement

### a) Plaintiffs' Case Is Strong, But Entails Risks

Courts evaluating proposed class action settlements consider the strength of the plaintiffs' case and the risks of further litigation.  *See, e.g., Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  While Plaintiffs and Plaintiffs' Counsel believe that they could ultimately prevail against Defendants, they recognize that numerous risks and uncertainties would accompany further litigation of the Settlement Class' claims.

The fraud alleged in this case centered around Barrett and its senior officers allegedly making a series of materially misleading statements and omissions about the true level of Barrett's workers' compensation claims and the Company's workers' compensation reserve.  For example, early in the Settlement Class Period, Defendants publicly represented to investors that workers' compensation reserves were "strengthened," while allegedly hiding the Company's true exposure.  Specifically, as later confirmed, Barrett began to pay "more dollars out sooner" on claims from prior periods and "put[] up dollars on claims quicker."  This process, which Defendants allegedly misleadingly referred to as "reserve strengthening," caused a substantial disruption in the actuarial data related to the Company's workers' compensation claims. Additionally, the rapid transfer of reserve dollars to specifically identified open claims skewed

-9-

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

the ratios between the various components of the workers' compensation reserve.  Nevertheless, Defendants falsely assured investors that the reserve was "conservative," "adequate," "reasonable and objective," that it represented management's "best estimate," and was the result of an "informed judgment."

The most immediate risk Plaintiffs faced was surviving Defendants' motions to dismiss that were pending when the Settlement was reached.  To survive a motion to dismiss, a securities fraud complaint must (i) meet the heightened pleading requirements of Rule 9(b); (ii) contain sufficient facts to "state a claim to relief that is plausible on its face" (*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); and (iii) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  If Defendants' motions to dismiss were granted with prejudice, the case would have been dismissed in its entirety without any recovery to the Settlement Class.

Defendants argued in their motions to dismiss that Plaintiffs failed to identify a material omission or misrepresentation of fact in connection with the workers' compensation reserve. Specifically, Defendants argued that the conduct at issue involved three separate and discrete events (relating to Barrett's estimate of its future workers' compensation liability, relating to the former CFO's unsupported journal entries, and relating to accounting errors), and that none of them amounted to securities fraud.

With respect to the first category of alleged misstatements, Defendants argued, among other things, that estimating workers' compensation reserves is an "inherently subjective exercise in predicting uncertain future events," and is not actionable in this context, and there was no intentional or reckless attempt to mislead when Barrett failed to provide an actuarial consultant's report to its auditor.  Defendants emphasized that independent counsel that investigated the issue at the auditor's request did not find that Barrett had committed an "illegal act" in connection with the actuarial consultant's report.

With respect to the second category of alleged misstatements, Barrett did not contest that the former CFO's journal entries were misstatements that were made knowingly, but Defendants

-10-

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   instead argued that the unsupported entries had no effect on Barrett's consolidated balance sheets

2   and no material cumulative effect on Barrett's income from operations or net income, and that

3   Plaintiffs failed to allege facts to show that the misstatements caused any plaintiff to sustain an

4   economic loss.

5          With respect to the third category of alleged misstatements, Defendants argued that

6   Plaintiffs had not alleged any facts to show that the accounting errors were fraudulent or that the

7   errors caused any plaintiff to sustain an economic loss.  Even assuming that Plaintiffs satisfied

8   the heightened pleading standards of the PSLRA, Defendants undoubtedly would have continued

9   to press those and other arguments at summary judgment or trial, and would have challenged the

10  existence and amount of damages.

11         While Plaintiffs and Plaintiffs' Counsel believe that Plaintiffs' claims are strong and that

12  they would be able to develop the evidence needed to prevail at summary judgment and trial,

13  they nonetheless recognize that if the Court or the jury were to accept any of Defendants'

14  arguments or defenses, either at the pleading stage, summary judgment or at trial, it would

15  eliminate or dramatically limit any potential recovery.  These risks were more acute in this case

16  because of the complex nature of accounting for workers' compensation reserves.  Whether a

17  jury would appreciate the nuances that both sides would be arguing was uncertain.

18         In addition to the risks inherent in any litigation, and with respect to these alleged claims

19  specifically, Barrett's ability to pay a substantial judgment, and the wasting insurance policies,

20  were factors considered by Plaintiffs' Counsel when accepting the mediator's recommendation

21  to settle for $12 million.  Plaintiffs' Counsel monitored Barrett's financial condition to assess its

22  ability to pay a judgment or settlement at higher levels.  In addition, Barrett provided Mediator

23  Melnick and Plaintiffs' Counsel with certain information regarding Barrett's financial condition,

24  including its short-term liabilities, short-term assets, cash expenditures and cash receipts, and

25  Barrett's cash-flow analysis.  There was a risk that the Company could not satisfy a trial verdict

26  for the full extent of estimated damages in this case.  Further, Plaintiffs' Counsel concluded that

27  Defendants were unlikely to contribute additional monies to pay a materially larger settlement.

-11-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

Plaintiffs' Counsel were also aware that the $10 million in initially available insurance coverage had been, and was continuing to be, depleted by defense costs. Plaintiffs' Counsel understand that the mediator's recommendation to settle the case for $12 million requires exhaustion of the remaining $8.7 million in insurance, as well as a substantial contribution by Barrett itself of $3.3 million in cash. As mentioned above, Mediator Melnick, in his professional mediator opinion, believes that the total $12 million Settlement was the most that could be obtained by Plaintiffs at the time the Settlement was reached. Melnick Decl. ¶10.

The Settlement avoids these litigation risks, and the risk associated with the inability to fund a larger settlement or judgment, and guarantees the Settlement Class a favorable and immediate cash recovery.

### b) The Expense, Complexity, And <u>Likely Duration Of Further Litigation</u>

Courts consistently recognize that the expense, complexity, and possible duration of the litigation are key factors in evaluating the reasonableness of a settlement. *See, e.g., Torrisi*, 8 F.3d at 1375-76 (finding that "the cost, complexity and time of fully litigating the case" rendered the settlement fair). Thus, a court "shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 1988 WL 158947, at *4 (W.D. Wash. July 28, 1988) ("[T]he Court finds that the best interests of the class are served by assuring that amount to the class now, before it is subjected further to the vagaries of litigation.").

It is well known that class action litigation is inherently complex. *See, e.g., Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (finding a proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). Courts recognize that securities class actions, in particular, are typically complex and expensive to prosecute. *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005). This

-12-

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   difficult and complex securities class action is no exception.  This Action, if taken to trial, would

2   have expended substantial party and judicial resources.  *See Browne v. Am. Honda Motor Co.*,

3   2010 WL 9499072, at *11 (C.D. Cal. July 29, 2010) ("Had the parties aggressively litigated class

4   certification and tried the case, it could have consumed substantial party and court resources.

5   There is a 'strong judicial policy that favors settlements, particularly where complex class action

6   litigation is concerned.'").

7          This is a case with a complex and fluid fact pattern, with challenging issues involving

8   setting workers' compensation reserves and accounting related thereto.  Litigation of the claims

9   raised many complex issues, as is evidenced by the multiple over-100-page complaints, and

10  voluminous briefing and exhibits dedicated to addressing Defendants' multiple arguments in

11  their motions to dismiss.  The litigation also raised a number of complex questions that required

12  substantial efforts by Plaintiffs' Counsel, often through analysis of the ever-changing factual

13  record and consultation with experts.  Plaintiffs' Counsel's consultation with experts was

14  necessary given the complex nature of the subject matter underlying the claims.

15         Continuation of the litigation, assuming Plaintiffs would have overcome the motions to

16  dismiss, would have required extensive discovery, requiring much additional time by the Parties

17  (and likely the Court to resolve disputes), and at great additional expense.  Substantial time and

18  expense also would be expended in further motion practice, including at the class certification

19  and summary judgment stages, and preparing the case for trial.  The trial itself would be time-

20  consuming, expensive, and uncertain – and no matter the outcome, appeals would be likely.

21  Even if Plaintiffs prevailed through all motion practice, and ultimately won at trial, the appeals

22  process could span several years, during which the Settlement Class would receive nothing.

23         In contrast, the Settlement results in an immediate and substantial tangible recovery for

24  the Settlement Class, without the risk, expense, and delay of further litigation.  *See Vasquez v.*

25  *Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) ("It has been held proper to

26  take the bird in hand instead of a prospective flock in the bush.") (internal citations omitted).

27  This factor likewise favors approval.

-13-

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

### c) The Risk Of Maintaining Class Action Status Throughout The Trial

The potential difficulties in obtaining and maintaining class certification weigh in favor of final approval.  *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig. ("VW")*, 2016 WL 6248426, at *12 (N.D. Cal. Oct. 25, 2016).  Although Plaintiffs' Counsel believe they would have successfully certified a litigation class and maintained certification through trial, "if the parties had not settled, [Defendants] could have opposed Plaintiffs' motion for class certification and, even if the Court certified the class, there is a risk the Court could later de-certify it.  As such, this factor favors settlement."  *Id.*; *see also Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

### d) The Amount Obtained In Settlement

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum.  Nor is the proposed settlement "to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625.  As "[s]ettlement is the offspring of compromise[] the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."  *Hanlon*, 150 F.3d at 1027.  "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation."  *Officers for Justice*, 688 F.2d at 624.  In fact, a settlement may be acceptable even if it amounts to only a fraction of the potential recovery that might be available at trial.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Here, the Settlement provides for the recovery of $12 million in cash.  The Settlement was the direct consequence of Mediator Melnick's informed mediator's recommendation, and was reached only after Plaintiffs' Counsel had conducted an extensive investigation, consulted with experts, drafted multiple detailed consolidated complaints, opposed Defendants' motions to

-14-

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1    dismiss, and engaged in substantial negotiations.   The recovery provides an immediate and

2    tangible benefit to the Settlement Class, and is well within a range of reasonableness in light of

3    the best possible recovery and the substantial risks presented by the litigation.

4        Plaintiffs' Counsel engaged a consultant to estimate the potentially recoverable damages.

5    Estimating aggregate damages can be challenging due, among other things, to assumptions that

6    must be made regarding trading activity.   DeLange Decl. ¶53.   Here, such an estimate of

7    potential maximum recoverable damages, assuming Plaintiffs wholly prevailed and before taking

8    into account Defendants' causation arguments and other defenses, was at most approximately

9    $145 million.  *Id.*  However, damages would be reduced or eliminated if the jury accepted any of

10   Defendants' arguments, including finding that a portion or all of the losses were attributable to

11   causes other than the alleged misstatements or omissions, or that certain statements were not

12   actionable, or that other elements were not met.[3]

### e) The Extent Of Discovery Completed
### And The Stage Of The Proceedings

15       The stage of the proceedings and the amount of information available to the parties to

16   assess the strengths and weaknesses of their case are additional factors that courts consider in

17   determining the fairness, reasonableness, and adequacy of a settlement.  *See Mego Fin.*, 213 F.3d

18   at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009).

19   "In the context of class action settlements, formal discovery is not a necessary ticket to the

20   bargaining table where the parties have sufficient information to make an informed decision

---

[3] Even before accounting for Defendants' causation arguments and other defenses, the recovery of approximately 8.3% of the maximum recoverable damages is significantly higher than the 1.8% median settlement recovery as a percentage of estimated damages in securities class actions in 2015, as reported by Cornerstone Research.  *See* Cornerstone Research, "Securities Class Action Settlements: 2015 Review and Analysis," at p. 8, Figure 7, *available at* www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2015-Review-and-Analysis; *see also* NERA, "Recent Trends in Securities Class Action Litigation: 2015 Full-Year Review," at p. 34, Figure 30 (reporting a 0.7% median settlement value as a percentage of investor losses in 2015), *available at* www.nera.com/content/dam/nera/publications/2016/2015_Securities_Trends_Report_NERA.pdf.

-15-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   about settlement. . . . Instead, courts look for indications 'the parties carefully investigated the
2   claims before reaching a resolution.'" *VW*, 2016 WL 6248426, at *13 (quoting *Mego Fin.*, 213
3   F.3d at 459; *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014)).

4       Indeed, the Honorable Charles R. Breyer recently granted final approval of the
5   Volkswagen consumer class action where "the parties have not engaged in any dispositive
6   motion practice." *VW*, 2016 WL 6248426, at *13; *see also, e.g., Mego Fin.*, 213 F.3d at 459
7   (finding that even absent extensive formal discovery, class counsel's significant investigation
8   and research supported settlement approval); *Linney v. Cellular Alas. P'ship*, 151 F.3d 1234,
9   1239 (9th Cir. 1998); *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6
10  (N.D. Cal. Sept. 13, 2011) (approving settlement after the filing of a motion to dismiss and prior
11  to significant discovery).

12      Here, before accepting the mediator's recommendation, Plaintiffs' Counsel had
13  thoroughly evaluated the strengths and weaknesses of Plaintiffs' claims.  As set forth in greater
14  detail in the DeLange Declaration (Section II), Plaintiffs' Counsel developed the factual and
15  legal record by, among other things:

16  - Performing an in-depth review and analysis of:  (i) Barrett's public SEC filings;
17    (ii) research and other reports by securities and financial analysts covering Barrett
18    and its business; (iii) Barrett's press releases and other public statements made by
19    or about Defendants; (iv) news articles and other media reports about Barrett;
20    (v) transcripts of Barrett's earnings conference calls; and (vi) pricing, trading, and
21    other data concerning Barrett common stock;

22  - Conducting a thorough investigation identifying and interviewing potential
23    percipient witnesses.  Six former Barrett employees provided detailed information
24    contained in the Complaint, including a former risk manager, a former risk
25    management consultant, two former area managers, a branch manager, and a
26    former director of business development;

27  - Consulting with accounting and damages experts;

-16-

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

- Drafting the detailed voluminous initial consolidated complaint;

- Monitoring additional information and disclosures that were made during the litigation, resulting in Plaintiffs drafting detailed amended consolidated complaints that they believe were sufficient to overcome the PSLRA's heightened pleading standard;

- Preparing extensive briefing in response to Defendants' multiple motions to dismiss; and

- Preparing for and participating in the lengthy mediation process, including drafting Plaintiffs' mediation statements, analyzing Defendants' mediation statements, and analyzing Barrett's financial condition and ability to pay a substantial judgment.

Through these efforts, Plaintiffs gained sufficient information to evaluate the mediator's recommendation to settle the action for $12 million in cash before additional time and resources were expended on further litigation.  Courts in this Circuit have recognized that, "[t]hrough protracted litigation, the settlement class could conceivably extract more, but at a plausible risk of getting nothing." *In re Critical Path, Inc. Sec. Litig.*, 2002 WL 32627559, at *7 (N.D. Cal. June 18, 2002).  For this reason, courts have commended class counsel for recognizing when, as in this case, a prompt resolution of the matter is in the best interests of the class.  *See Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly."), *aff'd*, 331 Fed. App'x 452, 457 (9th Cir. 2009).

Indeed, courts regularly approve settlements reached relatively early in the formal litigation process.  *See, e.g., Mego Fin.*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class counsel's significant investigation and research supported settlement approval); *Linney*, 151 F.3d at 1239; *TD Ameritrade*, 2011 WL 4079226, at *6 (approving settlement after the filing of a motion to dismiss and prior to significant discovery).  In sum, the

-17-

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   Parties reached a settlement when they were well informed as to the facts, legal issues, and risks

2   of the Action.

### f)  The Experience And Views Of
### Plaintiffs And Plaintiffs' Counsel

5       Courts recognize that the opinion of experienced counsel supporting the settlement is

6   "entitled to considerable weight."  *See, e.g.*, *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

7   (N.D. Cal. 1980).  This makes sense, as counsel is "most closely acquainted with the facts of the

8   underlying litigation."  *Heritage Bond*, 2005 WL 1594403, at *9 (citations omitted).  "Parties

9   represented by competent counsel are better positioned than courts to produce a settlement that

10  fairly reflects each party's expected outcome in litigation."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d

11  373, 378 (9th Cir. 1995).  Thus, "the trial judge, absent fraud, collusion, or the like, should be

12  hesitant to substitute its own judgment for that of counsel."  *Heritage Bond*, 2005 WL 1594403,

13  at *9 (internal citation omitted).

14      Here, all three Plaintiffs' Counsel have many years of experience in litigating securities

15  class actions throughout the country and in assessing the respective merits of each side's case.[4]

16  Additionally,  throughout  the  litigation  and  settlement  negotiations,  Defendants  have  been

---

[4] *See* Firm Resumes of Plaintiffs' Counsel, attached to DeLange Decl. as Exhibits 4-A-C, 4-B-C, and 4-C-C.  For example, Lead Counsel Bernstein Litowitz has obtained recoveries on behalf of investors in securities class action litigation in this Circuit, alone – both before and after trial – in amounts totaling over $1 billion. *See, e.g., Roberti v. OSI Sys., Inc.*, 2:13-cv-9174-MWF (C.D. Cal.) ($15 million settlement); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 08-00832-JW (N.D. Cal.) ($173 million settlement); *In re Connectics Sec. Litig.*, 07-02940 SI (N.D. Cal.) ($12.75 million); *In re New Century*, 07-cv-00931 (FMOx) (C.D. Cal.) ($125 million); *In re Int'l Rectifier Corp. Sec. Litig.*, 07-02544-JFW (C.D. Cal.) ($90 million); *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 02-CV-2775-MRP (C.D. Cal.) ($92.5 million); *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 09-CV-1376-LHK (N.D. Cal.) ($125 million); *In re McKesson HBOC, Inc. Sec. Litig.*, 99-CV-20743 RMW (N.D. Cal.) (over $1.04 billion); *In re Wash. Mut., Inc. Sec. Litig.*, 07-cv-1809 (W.D. Wash.) ($208.5 million); *In re Toyota Motor Corp. Sec. Litig.*, CV 10-922 DSF (C.D. Cal.) ($25.5 million); *In re SunPower Sec. Litig.*, CV 09-5473-RS (N.D. Cal.) ($19.7 million); *In re Dendreon Corp. Class Action Litig.*, C11-01291JLR (W.D. Wash.) ($40 million); *In re Clarent Corp. Sec. Litig.*, Master File No. C-01-3361-CRB (N.D. Cal.) (obtaining plaintiff verdict at trial against CEO for knowing violation of federal securities laws).

-18-

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1    represented by very skilled and highly respected counsel at Miller Nash Graham & Dunn LLP
2    (representing Barrett), Covington & Burling LLP and Groff Murphy PLLC (representing
3    Defendant Michael Elich), and Janet Hoffman & Associates LLC and Hillis Clark Martin &
4    Peterson P.S. (representing Defendant James Miller).  In the face of this knowledgeable and
5    formidable defense, Plaintiffs' Counsel were nonetheless able to develop a case that was
6    sufficiently strong to, they believe, overcome the heightened pleading standard of the PSLRA,
7    and persuade Defendants, and their insurance carriers, to settle on terms favorable to the
8    Settlement Class.

9        Mediator Melnick confirms that all counsel were well versed in the risks involved in the
10   claims and defenses in the case:

11       I found the discussions in the mediation statements and during and related to the
12       mediation sessions to be extremely valuable in helping me understand the relative
13       merits of each Party's positions, and to identify the issues that were likely to serve
14       as the primary drivers and obstacles to achieving a settlement.  Counsel presented
15       significant arguments regarding their respective client's positions, and it was
16       apparent to me that both sides possessed strong, non-frivolous arguments, and that
17       neither side was assured of victory.

18   Mediator Decl. ¶9.

19       In addition, Plaintiffs' support for the Settlement here is further evidence that the
20   Settlement is fair, reasonable and adequate.  Under the regime put in place with the enactment of
21   the PSLRA, the Lead Plaintiff's support for a settlement should be accorded "special weight
22   because [the Lead Plaintiff] may have a better understanding of the case than most members of
23   the class." *DirecTV*, 221 F.R.D. at 528 (quoting Manual for Complex Litigation (Third) § 30.44
24   (1995)).  Congress enacted the PSLRA in large part to encourage sophisticated institutional
25   investors to take control of securities class actions and "increase the likelihood that parties with
26   significant holdings in issuers, whose interests are more strongly aligned with the class of
27   shareholders, will participate in the litigation and exercise control over the selection and actions

-19-

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   of plaintiff's counsel." H.R. Conf. Rep. 104-369, at *32 (1995).  Plaintiffs are institutional

2   investors and their support of the Settlement further supports its approval.

3               **g) The Reaction Of The Settlement**
4               **Class To The Proposed Settlement**

5         The reaction of the Settlement Class to the Settlement is another factor in determining the

6   adequacy of the Settlement.  *See Rambus*, 2009 WL 166689, at *3 (citation omitted).  "[T]he

7   absence of a large number of objections to a proposed class action settlement raises a strong

8   presumption that the terms of a proposed class settlement action are favorable to the class

9   members." *Omnivision*, 559 F. Supp. 2d at 1043 (citation omitted).  To date, no Settlement Class

10  Member has objected to the Settlement, the Plan of Allocation or Lead Counsel's fee and

11  expense request.  As set forth in the Preliminary Approval Order and the Notice, the deadline to

12  object is February 1, 2017.

13  **III.    THE PLAN OF ALLOCATION IS**
14  **FAIR, REASONABLE, AND ADEQUATE**

15        Assessment of the adequacy of a plan of allocation in a class action is governed by the

16  same standards of review applicable to the settlement as a whole – the plan needs to be "fair,

17  reasonable and adequate."  *See Omnivision*, 559 F. Supp. 2d at 1045; *Class Plaintiffs v. Seattle*,

18  955 F.2d 1268, 1284-85 (9th Cir. 1992).  "An allocation formula need only have a reasonable,

19  rational basis, particularly if recommended by experienced and competent class counsel."  *In re*

20  *WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (citation omitted).

21        Because they tend to mirror the complaint's allegations in securities class actions, "plans

22  that allocate money depending on the timing of purchases and sales of the securities at issue are

23  common." *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007);

24  *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming

25  plan of allocation where "claimants are to be reimbursed on a *pro rata* basis for their recognized

26  losses based largely on when they bought and sold their shares of General Instrument stock" as

27  "even handed").

-20-

MOTION FOR FINAL APPROVAL
(CASE No. 14-cv-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

Here, the proposed Plan of Allocation distributes the settlement proceeds on a *pro rata* basis, calculating a Claimant's relative loss proximately caused by Defendants' alleged false and misleading statements and material omissions, based on factors such as when and at what prices the Claimant purchased and sold Barrett common stock.   As explained in the DeLange Declaration and the Steinholt Declaration (Exhibit 3 to the DeLange Declaration), Plaintiffs engaged Caliber Advisers, Inc. to assist in developing a plan to allocate the Settlement proceeds among Claimants.

In developing the Plan of Allocation, Plaintiffs' expert calculated the amount of estimated artificial inflation in the per share closing price of Barrett common stock that allegedly was proximately caused by Defendants' alleged false and misleading statements and material omissions.  In calculating the estimated alleged artificial inflation caused by Defendants' alleged misrepresentations and omissions, Plaintiffs' expert considered the fraud-related price declines in Barrett's common stock price following three alleged corrective disclosures that, according to Plaintiffs' allegations, revealed (at least partially) the alleged truth to investors.  In doing so, Plaintiffs' expert performed an event study, a widely accepted methodology used to isolate the company-specific portion of a price decline after controlling for market and industry factors, and to determine whether a decline is statistically significant.  Steinholt Decl. ¶11.

The Plan of Allocation was detailed in the Notice.  In response to over 22,899 Notices sent, there have been no objections.

## IV.   THE SETTLEMENT CLASS RECEIVED ADEQUATE NOTICE

Plaintiffs have provided the Settlement Class with adequate notice of the Settlement. Beginning on November 21, 2016, Plaintiffs, through the Claims Administrator, disseminated over 22,899 copies of the Court-approved Notice to potential Settlement Class Members and their brokers and nominees who could be identified with reasonable effort, from multiple sources.  *See* Bareither Decl. ¶¶2-6.  In addition, the Court-approved Summary Notice was published in the *Investor's Business Daily* and over the *PR Newswire* on November 28, 2016. *See id.* ¶12.  Information regarding the Settlement was also made available through a toll-free

-21-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   telephone number established for the Settlement, *see id.* ¶13, and posted on the website

2   established by the Claims Administrator specifically for this Settlement.  *See id.* ¶14.  This

3   method of giving notice, previously approved by the Court, is appropriate because it directs

4   notice in a "reasonable manner to all class members who would be bound by the propos[ed

5   judgment]."  Fed. R. Civ. P. 23(e)(1).

6       The Notice provides the necessary information for Settlement Class Members to make an

7   informed decision regarding the proposed Settlement.  It informs the Settlement Class of, among

8   other things:  (1) the amount of the Settlement; (2) reference to the mediator's qualifications

9   supporting the mediator's recommendation; (3) the reasons why the Parties propose the

10  Settlement; (4) the estimated average recovery per damaged share of Barrett common stock;

11  (5) the maximum amount of attorneys' fees and expenses that will be sought; (6) the name,

12  telephone number, and address of representatives of Lead Counsel who will be reasonably

13  available to answer questions from Settlement Class Members concerning matters contained in

14  the Notice; (7) the right of Settlement Class Members to object to the Settlement or seek

15  exclusion from the Settlement Class, and the consequences thereof; and (8) the dates and

16  deadlines for certain Settlement-related events.  15 U.S.C. § 78u-4(a)(7). The Notice further

17  explains that the Net Settlement Fund will be distributed to eligible Settlement Class Members

18  who submit valid and timely Proof of Claim Forms under the Plan of Allocation proposed by

19  Plaintiffs and included in the Notice.  Thus, the Notice is sufficient because it "'generally

20  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

21  investigate and to come forward and be heard.'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948,

22  962 (9th Cir. 2009) (citations omitted); *see also In re Wireless Facilities, Inc. Sec. Litig.*, 253

23  F.R.D. 630, 636 (S.D. Cal. 2008).

24      In sum, the Notice fairly apprises Settlement Class Members of their rights with respect

25  to the Settlement, is the best notice practicable under the circumstances, and complies with the

26  Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due

27  process.  It is substantially similar to other notice plans that have been approved and used

-22-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-cv-5884-BHS)

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1   successfully in this Circuit and this District.  *See, e.g., In re Dendreon Corp. Class Action Litig.*,

2   C11-01291JLR (W.D. Wash.); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170

3   (S.D. Cal. 2007); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *1 (N.D. Cal.

4   Nov. 26, 2007).

5       In addition, Plaintiffs' Counsel are informed that Defendants timely served the Class

6   Action Fairness Act ("CAFA") notice on November 7, 2016, a copy of which is attached as

7   Exhibit 5 to the DeLange Declaration.

8   **V.   CERTIFICATION OF THE**
    **SETTLEMENT CLASS REMAINS WARRANTED**

9

10      The Parties stipulated to certification of the Settlement Class for settlement purposes.  *See*

11  Stip. ¶2.  The Court's November 7, 2016 Preliminary Approval Order granted Plaintiffs' motion

12  for preliminary approval of the Settlement and preliminarily certified the Settlement Class for

13  settlement purposes only, pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil

14  Procedure.  ECF No. 117.  Nothing has changed to alter the propriety of certification for

15  settlement purposes and, for all the reasons stated in Plaintiffs' motion for preliminary approval

16  (ECF No. 112), Plaintiffs request that the Court grant final certification of the Settlement Class

17  pursuant to Rules 23(a) and (b)(3).

18  **VI.   CONCLUSION**

19      Plaintiffs respectfully request that the Court grant final approval of the proposed

20  Settlement and Plan of Allocation.  For the Court's convenience following the objection and opt-

21  out deadline, Plaintiffs will submit with their Reply papers the Parties' agreed-upon form of

22  proposed Judgment, including a list of any exclusion requests, and a proposed Order approving

23  the Plan of Allocation.

24  Dated:  January 18, 2017          Respectfully submitted,

25                                    By: */s/ Bradley S. Keller*
                                          Bradley S. Keller, WSBA # 10665

26                                    BYRNES KELLER CROMWELL LLP

27

-23-

MOTION FOR FINAL APPROVAL
(CASE NO. 14-CV-5884-BHS)

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1000 Second Avenue, 38th Floor
Seattle, WA 98104
Tel:     (206) 622-2000
Fax:     (206) 622-2522
Email: bkeller@byrneskeller.com

*Liaison Counsel for Lead Plaintiff Painters & Allied*
*Trades District Council No. 35 Pension and Annuity Funds*

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
Timothy A. DeLange (*pro hac vice*)
Niki L. Mendoza (*pro hac vice*)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
Email: timothyd@blbglaw.com
         nikim@blbglaw.com

*Counsel for Lead Plaintiff Painters & Allied Trades*
*District Council No. 35 Pension and Annuity Funds and*
*Lead Counsel for the Settlement Class*

WOLF HALDENSTEIN ADLER FREEMAN
    & HERZ LLP
Gregory M. Nespole
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 545-4653
Email: nespole@whafh.com

*Counsel for Named Plaintiff Bakers Local No. 433*
*Pension Fund*

-24-

LAW OFFICES OF
BYRNES KELLER CROMWELL LLP
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522

1

## <u>CERTIFICATE OF SERVICE</u>

2        The undersigned attorney certifies that on the 18th day of January, 2017, I

3  electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which

4  will send notification of such filing to all counsel on record in the matter.

5

6                                      /s/ *Bradley S. Keller*

7                                      Byrnes Keller Cromwell LLP

8                                      1000 Second Avenue, 38th Floor

                                      Seattle, WA  98104

9                                      Telephone:  (206) 622-2000

                                      Facsimile:  (206) 622-2522

                                      bkeller@byrneskeller.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

-25-

LAW OFFICES OF
**BYRNES KELLER CROMWELL LLP**
1000 SECOND AVENUE, 38TH FLOOR
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 622-2000
FACSIMILE: (206) 622-2522